UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

AKLOG BIRARA,

    Plaintiff,

v.

MESSELE KELEL and
JOHN DOES 1–10,

    Defendants.

Civil Action No. TDC-17-3241

## MEMORANDUM OPINION

Plaintiff Dr. Aklog Birara has filed a civil action against Defendants Messele Kelel and 10 unnamed John Doe Defendants ("Doe Defendants") alleging that Defendants defamed him in emails sent to prominent members of the Ethiopian community in the United States. Birara asserts common law tort claims against Defendants. Presently pending before the Court is Kelel's Motion to Dismiss. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Birara, a resident of Maryland who is originally from Ethiopia, is an active participant in the Ethiopian immigrant community in Maryland and the United States. According to Birara, tens of thousands of Ethiopian immigrants live in Maryland. Birara, who recently completed a 30-year career at the World Bank, mentors young Africans, advocates for the rights of Ethiopians, and participates in the work of a multiple Ethiopia-focused organizations, including Ethiopian Dialogue Forum ("EDF"), a think-tank based in Maryland.

Birara immigrated to the United States from Ethiopia in 1977 after the military junta Derg and the dictator Mengistu Haile Mariam came to power. In his Amended Complaint, Birara describes the Mengistu and Derg regime's violence, genocide, and brutality and how those actions, and war and famine, affected Ethiopians. He also describes the relationship and military conflict between Ethiopia and Eritrea, which separated from Ethiopia and became a separate nation after Mengistu fell from power. The relationship between the two countries is still tense, and the current Ethiopian government claims that a group named "Ginbot 7," which opposes it, is a terrorist organization funded and sponsored by Eritrea. According to Birara, any accusation that a member of the Ethiopian community was associated with Derg, the "Red Terror" campaign perpetrated by Mengistu, or Mengistu's Workers Party of Ethiopia will subject that person to "ostracism, condemnation, opprobrium, and suspicion" from others in the community and could also carry legal consequences for the person in Ethiopia and the United States, including immigration difficulties and criminal prosecution. Am. Compl. ¶ 11, ECF No. 20.

Birara alleges that between September 30 and October 15, 2017, Defendants, and specifically Kelel, sent emails to several dozen prominent members of the Ethiopian community in the United States stating that Birara had been a member of the Derg junta and the Workers Party of Ethiopia, was involved in the Red Terror, was associated with another group whose members were prominent in the Workers Party of Ethiopia, had declared loyalty to Eritrea, and was a member of Ginbot 7. Each of these statements, Birara asserts, is false.

On November 2, 2017, Birara filed his Complaint in this Court in which he asserts claims of defamation (Count 1), false light (Count 2), negligence and gross negligence (Count 3), and tortious interference with prospective economic advantage (Count 4). He further alleges that Defendants are liable for aiding and abetting others in the wrongful conduct and seeks

2

compensatory and punitive damages, declaratory and injunctive relief, interest, attorney's fees, and costs.

## DISCUSSION

After Birara filed an Amended Complaint, Kelel, who is self-represented and resides in Texas, filed a submission entitled "Defendant's Special Exceptions and Objections to First Plaintiff's Amended Complaint," the form of which appears to be a pleading under the Texas Rules of Civil Procedure. *See* Tex. R. Civ. Pro. 85, 91. In substance, Kelel requests dismissal of Birara's Amended Complaint on various grounds and asks that the Court rule on these arguments before he files an answer. Where Kelel's filing seeks the kind of relief usually sought in a motion under Federal Rule of Civil Procedure 12, the Court will construe Kelel's filing as a Motion to Dismiss under Rule 12.

Specifically, Kelel seeks dismissal of all counts of the Amended Complaint based on lack of jurisdiction, improper venue, and failure to state a claim. He also argues for dismissal on the basis that the Doe Defendants are necessary parties who must be joined under Federal Rule of Civil Procedure 19 and that Birara has failed to prosecute his claims by not identifying the Doe Defendants in a timely manner.

### I. Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction, "constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998). Because questions of subject matter jurisdiction concern the court's power to hear the case, they must be resolved before the court can turn to the sufficiency or merits of a claim. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter springs

from the nature and limits of the judicial power of the United States and is inflexible without exception." (citation omitted)).

Birara asserts that the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Under that provision, the Court has subject matter jurisdiction where the parties are citizens of different states and the amount in controversy exceeds $75,000. *Id.* The Amended Complaint states that Birara is a citizen of Maryland and Kelel is a citizen of Texas. Birara seeks more than $1 million in damages. Although diversity jurisdiction would appear to be established based on these allegations, Birara also names the Doe Defendants as parties. In diversity suits in federal court, a plaintiff is not permitted to name unknown defendants as "John Doe" defendants "because the existence of diversity jurisdiction cannot be determined without knowledge of every defendant's place of citizenship." *Howell ex rel. Goerdt v. Tribune Entm't Co.*, 106 F.3d 215, 218 (7th Cir. 1997). One exception to this rule is when the defendants are nominal parties serving only as placeholders for individuals who may later be found to be liable. *See id.*; *Moore v. Gen. Motors Pension Plans*, 91 F.3d 848, 850 (7th Cir. 1996). If a Doe defendant prevents the court from exercising jurisdiction, the court may dismiss that defendant under Federal Rule of Civil Procedure 21 so long as the Doe defendant is not necessary to resolve the plaintiff's claims. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989); *see Howell*, 106 F.3d at 218.

Since the Court does not know the citizenship of the Doe Defendants and, as the Amended Complaint suggests, it is conceivable that the Doe Defendants, as members of the Ethiopian diaspora in the United States, reside in Maryland, the presence of the Doe Defendants precludes the Court from exercising diversity jurisdiction. *See Howell*, 106 F.3d at 218. The Doe Defendants are not nominal, because Birara has alleged that they are not placeholder defendants, but are specific participants, with unknown names, who joined in circulating the false emails. *See Moore*,

91 F.3d at 850. As discussed below, there has been no showing that the Doe Defendants are necessary parties to resolve Birara's claims. *See infra* part V. The Court will therefore dismiss the Doe Defendants and retain jurisdiction over Birara's claims. *See Newman-Green, Inc.*, 490 U.S. at 832.

## II. Personal Jurisdiction

Kelel's assertion of a lack of jurisdiction is fairly construed as a Motion to Dismiss for Lack of Personal Jurisdiction under Federal Rule of Civil Procedure 12(b)(2). It is the plaintiff's burden to establish personal jurisdiction. *See Mylan Labs. Inc. v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir. 1993). To carry that burden at the pleading stage, the plaintiff need only make a *prima facie* showing that a defendant is properly subject to this Court's jurisdiction. *Id.* In evaluating the plaintiff's showing, this Court must accept the plaintiff's allegations as true, and it must draw all reasonable inferences and resolve any factual conflicts in the plaintiff's favor. *Id.* The Court may consider evidence outside the pleadings in resolving a Rule 12(b)(2) motion. *CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d. 757, 763–64 (D. Md. 2009).

Kelel, a citizen of Texas, asserts that his contacts with Maryland are insufficient to allow this Court to exercise jurisdiction over him. A district court's exercise of personal jurisdiction over a non-resident defendant must satisfy both the long-arm statute of the state in which the court sits and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Birara alleges that Kelel committed tortious acts that affected him in Maryland. The Maryland long-arm statute authorizes jurisdiction over a party who:

> [c]auses tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State.

Md. Code Ann., Cts. & Jud. Proc. § 6–103(b)(4) (West 2011). Because courts have interpreted the Maryland long-arm statute to reach as far as the Constitution allows, the statutory and due process components of the personal jurisdiction analysis merge. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002).

The due process analysis requires a showing that Kelel has sufficient "minimum contacts" with Maryland such that "maintenance of the suit [in this state] does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Courts distinguish between two types of personal jurisdiction: general and specific. General jurisdiction offers a path to personal jurisdiction when the party has affiliations with the state that are "so continuous and systematic as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Specific jurisdiction provides jurisdiction "over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). Here, Birara does not allege that Kelel maintains "continuous and systematic contacts" with the forum state, so he must establish specific jurisdiction over Kelel. *See id.* at 416.

In order for a court to exercise specific personal jurisdiction over a defendant, the defendant must "purposefully avail[] itself of the privilege of conducting activities within the forum State," and its "conduct and connection with the forum State" must be "such that [it] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). These requirements are satisfied if the defendant purposefully directed its activities at the residents of the forum state, and the cause of action "results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–

73 (1985); *Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 328 (4th Cir. 2013) (articulating the specific jurisdiction considerations when the defendant's conduct takes place over the internet).

For a defamation claim, as an intentional tort, personal jurisdiction may be shown where "(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." *Carefirst of Md.*, 334 F.3d at 398 n.7; *see Calder v. Jones*, 465 U.S. 783, 788–90 (1984). When the defamatory statement is communicated over the internet, the plaintiff must show that the defendant targeted others in the state, rather than alleging solely that the defendant shared the defamatory statement on the internet and the plaintiff felt its effects in the state. *Carefirst of Md.*, 334 F.3d at 400; *see Marten v. Godwin*, 499 F.3d 290, 298 (3d Cir. 2007). If a defendant is alleged to send a defamatory email while outside of the forum state, there is personal jurisdiction over the defendant if the email is sent to recipients in the state and the defendant knew that the recipients were in the state. *See Shrader v. Biddinger*, 633 F.3d 1235, 1248 (10th Cir. 2011); *Tamburo v. Dworkin*, 601 F.3d 693, 706 (7th Cir. 2010).

In the Amended Complaint, Birara has alleged sufficient minimum contacts between Kelel and Maryland such that the Court may exercise personal jurisdiction over Kelel. He asserts that Kelel engaged in defamation, an intentional tort. The subjects of the email were Birara, a Maryland resident, and EDF, an organization based in Maryland. Up to 40 percent of the recipients of the defamatory emails reside in Maryland and read the emails in Maryland. Birara has also sufficiently alleged that Kelel intentionally targeted readers in Maryland and knew the readers were in Maryland, because of the large Ethiopian community that resides in Maryland, because the recipients were all on the email list of EDF, a Maryland-based organization, and because Birara

7

has identified several recipients as Maryland residents, but none who were Texas residents. Because Birara has plausibly alleged that Kelel intentionally directed his conduct toward Maryland, it is constitutionally reasonable for the Court to exercise jurisdiction over him. *See Carefirst of Md.*, 334 F.3d at 398 n.7; *Tamburo*, 601 F.3d at 706. The Motion will be denied as to personal jurisdiction.

### III. Venue

Kelel's claim of improper venue also fails. Venue is ordinarily proper in the judicial district where "any defendant resides, if all defendants are residents of the State in which the district is located" or where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(1)–(2). "[I]f there is no district in which an action may otherwise be brought," venue is proper in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." *Id.* § 1391(b)(3). Since Kelel does not reside in Maryland, venue can be proper in this district under only 28 U.S.C. § 1391(b)(2) or (b)(3). Where Birara resides in Maryland and recipients of the offending emails reside in Maryland, the Court concludes that a substantial part of the events giving rise to the defamation claim occurred in Maryland. *See Seidel v. Kirby*, 296 F. Supp. 3d 745, 753–54 (D. Md. 2017) (noting that defamation occurs in the place where the defamatory statement "is publicized such that it may harm a plaintiff's reputation"). Thus, venue is proper in Maryland.

### IV. Failure to State a Claim

Kelel also seeks dismissal on the grounds that the allegations in the Amended Complaint are insufficient to state plausible claims for relief, which the Court construes as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

### A. Defamation

To establish a prima facie case of defamation under Maryland law, a plaintiff must establish that (1) the defendant made a defamatory statement to a third person (a requirement known as publication); (2) the statement was false; (3) the defendant was legally at fault in making the statement; and (4) the plaintiff thereby suffered harm. *Gohari v. Darvish*, 767 A.2d 321, 327 (Md. 2001). Under the first element, a defamatory statement is one "which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person." *Id.* (quoting *Rosenberg v. Helinski*, 616 A.2d 866, 871 (Md. 1992)). Under the second element, a statement is "false" if it was "not substantially correct." *Piscatelli v. Van Smith*, 35 A.3d 1140, 1147 (Md. 2012). Establishing the third element, that a defendant is legally at fault, requires a showing that, at a minimum, the party making the false statement acted negligently. *Hearst Corp. v. Hughes*, 466 A.2d 486, 490–92 (Md. 1983). For the fourth element, actual harm must generally be established. *Id.* at 493; *Shapiro v. Massengill*, 661 A.2d 202, 217–18 (Md. Ct. Spec. App. 1995). When the statement accuses the plaintiff of a crime for which the plaintiff could be prosecuted, it is defamatory *per se*, and the injurious effect is presumed. *Metromedia, Inc. v. Hillman*, 400 A.2d 1117, 1119 (Md. 1979).

Birara has alleged each of the elements here. The Amended Complaint asserts that Kelel intentionally emailed dozens of individuals stating that Birara was a member of the Derg junta, Workers Party of Ethiopia, and Ginbot 7, among other statements. According to Birara, these statements are false and Kelel made them intentionally, without basis in fact. The Amended Complaint provides context to establish that the accusations in the emails are defamatory to a member of the Ethiopian community, since they will expose Birara to ostracization and contempt by other members of the community. In light of this context, Birara has plausibly alleged harm to his reputation, and since the statements arguably could result in Birara's criminal prosecution, the emails constitute defamation *per se*, and injurious effect is presumed. *Metromedia*, 400 A.2d at 1119. Since the Amended Complaint states a plausible claim for relief when read in the light most favorable to Birara, the Motion will be denied as to the defamation claim. *See Albright*, 510 U.S. at 268; *Gohari*, 767 A.2d at 327.

### B.    False Light

The elements of a false light/invasion of privacy claim under Maryland law are: (1) the defendant gave "publicity to a matter concerning another that places the other before the public in a false light," (2) "the false light in which the other person was placed would be highly offensive to a reasonable person," and (3) the defendant "had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 318 (Md. Ct. Spec. App. 1995) (quoting Restatement (Second) of Torts § 625E (Am. Law Inst. 1977)). Under Maryland law, "[r]egardless of whether a declaration is styled as a defamation action or an invasion of privacy action, the same considerations and legal standards apply." *AIDS Counseling & Testing Ctrs. v. Group W Television, Inc.*, 903 F.2d 1000, 1004 n.1 (4th Cir. 1990) (alteration in original) (quoting *Phillips*

*v. Wash. Magazine, Inc.*, 472 A.2d 98, 101 n.1 (Md. Ct. Spec. App. 1984)); *see Piscatelli*, 35 A.3d at 1146–47 (holding that it is "superfluous" to separately analyze a false light claim after concluding that the defamation claim failed).

Like the defamation claim, Birara has adequately stated a claim of false light under Maryland law. He has asserted that Kelel sent emails to dozens of individuals that made false claims about him that are offensive and inflammatory within the Ethiopian community in the United States. Furthermore, Birara has asserted that Kelel could not base these accusations in fact and deliberately made them to harm Birara's reputation. Kelel's Motion to Dismiss as to the false light claim will also be denied. *See Piscatelli*, 35 A.3d at 1146–47.

### C. Negligence and Gross Negligence

To state a claim of negligence under Maryland law, the plaintiff must allege (1) that the defendant owed a duty to the plaintiff based on an applicable standard of care; (2) a breach of that duty; (3) causation that relates that breach to the plaintiff's injury, and (4) damages. *Armacost v. Davis*, 200 A.3d 859, 872 (Md. 2019). Under Maryland law, gross negligence is "something more than simple negligence, and likely more akin to reckless conduct." *Barbre v. Pope*, 935 A.2d 699, 717 (Md. 2007) (quoting *Taylor v. Harford Cty. Dep't of Soc. Servs.*, 862 A.2d 1026, 1035 (Md. 2004)). It is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Id.* (quoting *Liscombe v. Potomac Edison Co.*, 495 A.2d 838, 846 (Md. 1985)).

A "duty" for purposes of negligence consists of "an obligation, to which the law will give recognition and effect to conform to a particular standard of conduct toward another." *Kennedy Krieger Inst., Inc. v. Partlow*, 191 A.3d 425, 440 (Md. 2018). Birara has cited to no authority

11

under Maryland law that establishes that a defendant owes a duty of care to a plaintiff not to negligently make false or incendiary statements about that person. He identifies no relationship that he has with Kelel that would give rise to a specific duty for Kelel to refrain from such conduct. Moreover, where Birara has alleged that Defendants acted "willfully" and "wantonly," Am. Compl. ¶ 42, which is inconsistent with a claim that they unintentionally caused injury to him, a negligence claim is not supported. *See Walser v. Resthaven Memorial Gardens*, 633 A.2d 466, 476 (Md. Ct. Spec. App. 1993) (acknowledging that generally if a "tortious act is intentional, it may be willful, wanton, or fraudulent, but not negligent," but noting that an intentional act may "may give rise to an action in negligence if one or more of the harmful consequences of that act are unintended" (quoting *Adams v. Carey*, 190 A. 815, 821 (1937))). Rather, the conduct of which Birara accuses Kelel is more properly addressed by a defamation claim. Since Birara has not adequately asserted that Kelel owed him a duty or unintentionally caused him harm, Kelel's Motion to Dismiss will be granted as to the negligence and gross negligence claims.

### D. Tortious Interference with Prospective Economic Advantage

Under Maryland law, the elements of the tort of tortious interference with prospective economic advantage or business relations are: "(1) intentional and wil[l]ful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Kaser v. Fin. Prot. Mktg., Inc.*, 831 A.2d 49, 53 (Md. 2003). This tort usually arises in two situations: "inducing the breach of an existing contract and, more broadly, maliciously or wrongfully interfering with economic relationships in the absence of a breach of contract." *K&K Mgmt., Inc. v. Lee*, 557 A.2d 965, 973 (Md. 1989). The third element requires a showing that the defendant had "both a tortious intent

12

and improper or wrongful conduct." *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*, 650 A.2d 260, 271 (Md. 1994). Unlawful conduct includes "violence or intimidation, defamation, injurious falsehood or other fraud, violation of the criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith." *K&K Mgmt., Inc.*, 557 A.2d at 979.

Here, Birara has not pointed to an existing contract that was breached by a third party because of Kelel's defamation, nor has he identified any specific economic relationship or opportunity which was impaired. *See id.* at 973; *Berry & Gould, P.A. v. Berry*, 757 A.2d 108, 114 (Md. 2000) (considering that the plaintiff had not shown evidence of a prospective contract with which the defendant interfered). Rather, Birara has asserted generally that Kelel's emails have harmed his ability to raise money in support of the causes for which he advocates. Even viewing the Amended Complaint in the light most favorable to Birara, the Court does not find sufficient facts to support a plausible claim that Kelel interfered with Birara's business relationships. Birara refers fleetingly only to the "disrupting" of "fundraising activities" and "causes," without identifying whether these were for-profit or not-for-profit activities or the nature of the relationships involved in the activities. Am. Compl. ¶¶ 45–46. To the extent these activities are not-for-profit, Birara points to no authority that those relationships are "economic" or "business" relationships within the meaning of Maryland law. Moreover, Birara has not alleged facts reflecting any connection between any defamatory statement and any adverse impact on a particular fundraising activity for a particular organization. In short, Birara has not alleged sufficient facts to support a claim of tortious interference with prospective economic advantage. *See Iqbal*, 556 U.S. at 678. Kelel's Motion will be granted as to this claim.

### E. Aiding and Abetting

Kelel argues that Birara's aiding and abetting claim must be dismissed because Birara cannot know that Defendants aimed to help one another since he does not know the identity of all but one. Under Maryland law, a person "may be held liable as a principal" for the tortious conduct of another where that person "by any means (words, signs, or motions) encouraged, incited, aided or abetted the act of the direct perpetrator of the tort." *Alleco, Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038, 1049 (Md. 1995) (quoting *Purdum v. Edwards*, 141 A. 550, 554 (1927)). "[C]ivil aider and abettor liability . . . requires that there exist underlying tortious activity in order for the alleged aider and abettor to be held liable." *Id.* at 1050. At this point, Birara has sufficiently alleged that Kelel and others have engaged in defamation, an underlying tortious act. Even if the Doe Defendants have been dismissed as parties, the Amended Complaint adequately alleges that one or more individuals other than Kelel sent specific defamatory emails as part of a common effort at defamation that included Kelel's transmission of certain offending emails. Viewing the allegations in the light most favorable to Birara, as is required at this early stage, the Court finds sufficient allegations to support a claim that Kelel aided and abetted others in specific acts of defamation.

### F. Declaratory and Injunctive Relief

Kelel also seeks dismissal of Birara's claims for declaratory and injunctive relief as conclusory and vague because Birara cannot yet prove who wrote the emails. Although Birara asserted claims for declaratory relief and injunctive relief as separate causes of action, they are forms of relief, not freestanding causes of action that must meet the pleading standard of Federal Rule of Civil Procedure 8. Thus, the Court will not dismiss the requests for declaratory and injunctive relief.

## V. Doe Defendants

Kelel argues that the Amended Complaint must be dismissed on various grounds relating to the Doe Defendants. Although the Doe Defendants have been dismissed to preserve the Court's subject matter jurisdiction, where Kelel has framed these arguments as independent grounds for dismissal of all claims, the Court will address them.

First Kelel claims that under Federal Rule of Civil Procedure 19, the Doe Defendants are necessary parties, but have not been identified. Federal Rule of Civil Procedure 19 addresses when joinder of a person to a civil action is required. Fed. R. Civ. P. 19(a). Generally, joinder is required when the person's absence would prevent the court from according complete relief among the parties, would impair an existing party's ability to protect its interest, or leave an existing party subject to a substantial risk of facing double or multiple obligations. Fed. R. Civ. P. 19(a)(1). Kelel has not provided a coherent argument on why the presence of the Doe Defendants is necessary to protect his interests. Even if they were required parties, as discussed above, the Doe Defendants cannot be joined at this time because of the potential lack of subject matter jurisdiction. *See supra* part I; *see* Fed. R. Civ. P. 19(a)(1). Although a court may dismiss a case under such circumstances if proceeding without that party cannot occur "in equity or good conscience," Fed. R. Civ. P. 19(b), it is premature for the Court to consider, based on the Amended Complaint alone, whether there is a fair argument for dismissal on that basis.

Although Kelel also cites Rule 19's requirement that a joined party must be dismissed if that party objects to venue and joinder would make venue improper, where the Doe Defendants have been dismissed already and the Court has found venue proper as to Kelel, *see supra* part III, that provision is inapplicable and does not provide a basis to dismiss the case against Kelel. *See* Fed. R. Civ. P. 19(a)(2)–(3). The Court will deny the Motion to the extent it is based on Rule 19.

15

Kelel also seeks dismissal for "failure to prosecute" because Birara has not identified the Doe Defendants in the time since the Complaint was filed in November 2017. Mot. Dismiss ¶ 7, ECF No. 21. An action or claim may be dismissed under Federal Rule of Civil Procedure 41 if the "plaintiff fails to prosecute." Fed. R. Civ. P. 41(b). Rule 41 dismissals are considered "a harsh remedy that are appropriate only in extreme circumstances." *Spencer v. Doe*, 139 F.3d 107, 112 (2d Cir. 1998). Although Birara has not identified the Doe Defendants since he filed the original Complaint, that failure is neither surprising nor improper where discovery has yet to commence. In any event, where the Doe Defendants have now been dismissed, the delay in identifying them provides no basis to dismiss the case against Kelel. The Amended Complaint will not be dismissed for failure to prosecute.

Finally, the doctrine of laches does not provide a basis for dismissing the Amended Complaint. Laches is an affirmative defense typically asserted in the defendant's Answer filed under Federal Rule of Civil Procedure 8(c). *White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990). Therefore, laches is not a ground for dismissal at this point. Kelel may reassert this affirmative defense in his Answer to the Amended Complaint.

## CONCLUSION

For the foregoing reasons, Kelel's Motion to Dismiss is GRANTED IN PART and DENIED IN PART. It is granted as to the negligence and gross negligence claims and the tortious interference with prospective economic advantage claim, which will be dismissed. The Doe Defendants will be dismissed. The Motion is otherwise denied. A separate Order shall issue.

Date: July 15, 2019

THEODORE D. CHUANG
United States District Judge